IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH LOPEZ, on behalf of himself and a class of others similarly situated, ) ) ) Plaintiffs, ) ) v. ) ) CITY OF CHICAGO, DETECTIVE JAMES ) DELAFONT, DETECTIVE JENNIFER ) DELUCIA, DETECTIVE HECTOR ) VERGARA, OFFICER JOSE GOMEZ, ) OFFICER DANIEL JACOBS and OFFICER ) ROBERT MYERS, ) ) Defendants. ) | 01 C 1823<br><br>Judge Der-Yeghiayan<br><br>Magistrate Judge Soat Brown |

## CITY OF CHICAGO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S FIFTH MOTION TO COMPEL

Rather than follow the discovery process set forth in Federal Rule of Civil Procedure 34, plaintiff has chosen to file a premature motion to compel the City of Chicago (the "City") to produce documents -- on an expedited basis, no less -- that have *never* been called for by any proper discovery request served in this case. Demonstrating the lack of civility that has typified his filings with this Court, plaintiff rests his motion not on factual or legal support, but rather on insult, innuendo, and outright falsehoods. Plaintiff's histrionics should not sway the Court into allowing him to circumvent the discovery rules, however. As plaintiff's own motion makes clear, he has never served a request for the documents in question, and thus his motion to compel must be denied. Moreover, because plaintiff opted to file this motion before ever serving a a Rule 34 request for the documents at issue, the Court should award the City its costs and attorney's fees incurred in responding to this groundless, improper motion.

-1-

## I. FACTUAL BACKGROUND

Joseph Lopez was arrested by the Chicago Police Department ("CPD") on July 20, 2000, after he had been identified by a witness from a photographic array as the person who shot and killed 12-year old Miguel DeLaRosa the previous day. Mr. Lopez was later released from custody after the police apprehended another individual, who confessed to the shooting. In March 2001, Mr. Lopez commenced this action pursuant to 42 U.S.C. § 1983, alleging that his rights were violated in conjunction with his arrest in July 2000. Plaintiff amended his complaint in November 2002 to add allegations on behalf of a putative class of individuals. As defined in the Second Amended Complaint ("SAC"), plaintiff seeks to represent:

> All persons arrested by the Chicago Police Department without an arrest warrant and who were detained in excess of 48 hours pending approval of felony charges by the State's Attorney at any time from March 15, 1999 to the present day.

(SAC ¶ 25.)

Plaintiff argues that the City of Chicago should be held liable in this matter because it allegedly maintains a policy of detaining persons arrested without a warrant for more than 48 hours without a judicial determination of whether there was probable cause to support the arrest. (*Id.* ¶ 59.) The City denies this allegation, and states that its policy and practice is to ensure that, absent exigent circumstances, judicial determinations of probable cause relating to warrantless arrests are sought within 48 hours of arrest -- a policy that is perfectly consistent with the Constitution. (*See* Answer to Second Amended Complaint and Affirmative Defenses ¶ 6, 13; *see also McLaughlin v. County of Riverside*, 500 U.S. 44 (1991).)

In discovery requests served before plaintiff filed his class allegations, plaintiff asked for any orders in place in the CPD relating to probable cause determinations for arrestees. (*See* Pls. Ex. A, Answer to Request No. 10.) The only such order in place at the time Lopez was arrested

-2-

CHI-1383910v1

(2000) was General Order 92-05, entitled *Processing Persons Under Department Control*. (*Id.*) The City produced that order and also produced General Order 02-03, which superceded General Order 92-05 in 2002. At no time did plaintiffs serve any discovery request seeking file materials associated with these Orders.

After filing his class allegations in November 2002, plaintiff waited more than six months to serve any discovery requests on the City relating to the putative class, opting instead to pursue discovery from the Cook County State's Attorney. When plaintiff finally got around to serving class discovery on the City in July 2003, he included a deposition notice pursuant to Rule 30(b)(6) for a witness to testify on behalf of the City with respect to a variety of topics, including "The City's formulation and implementation of changes to its policies and/or practices as stated in *Robinson v. City of Chicago*, as well as any steps taken by the City to monitor those changes." (*See* Pls. Ex. C, ¶ 5.)

*Robinson* was a case decided in 1986, which found a provision contained in CPD General Order 78-1 relating to extended detention of arrestees to be unconstitutional. *Robinson v. City of Chicago*, 638 F. Supp. 186, 191-93 (N.D. Ill. 1986), *rev'd on other grounds*, 868 F.2d 959 (7th Cir. 1989.) The provision in question was rescinded immediately after the trial court's 1986 decision (*see* Pls. Ex. B at D00735), and the entire order was rescinded in 1992 by General Order 92-05. General Order 78-1 was thus abolished nearly a decade before plaintiff, or any member of the putative class, was arrested and it has absolutely no relevance to this case. Although it would have been perfectly appropriate for the City to refuse to produce any witness to testify about this aged, irrelevant order, that was not the course the City chose. Instead, in the interest of cooperating in discovery, the City produced Lt. Thomas Lemmer -- the acting Director of the

-3-

CPD's Research and Development division -- to testify about this and other topics requested in plaintiff's 30(b)(6) notice.

In the course of preparing for his deposition, Lt. Lemmer reviewed certain teletypes orders that were associated with General Order 78-1, and that confirm that the provisions of 78-1 that were found wanting in *Robinson* were immediately rescinded by the CPD. (*See* Pls. Ex. B, at D00735, June 27, 1986 teletype order from CPD Superintendent rescinding the extended detention provision of General Order 78-1 four days after *Robinson* decision.) Although plaintiff did not request the production of *any* documents in his 30(b)(6) notice (*see* Pls. Ex. C), and the documents had not been called for by any prior discovery request, the City produced these orders to plaintiff's counsel before the deposition commenced.[1]

Plaintiff's counsel asked very few questions of Lt. Lemmer about the documents that were produced, but he fired off letters after the deposition demanding immediate production of all file materials associated with General Orders 78-1, 92-05, and 02-03. (*See* Pls. Ex. E.)[2] The City responded by pointing out that plaintiff had never served a Rule 34 request for those documents and suggested that plaintiff should comply with the Federal Rules. (*See* Pls.' Ex. F.) Plaintiff contended that he had requested the documents previously, but the only requests that he could point to as calling for these documents were two requests broadly seeking all documents

---

[1] Lt. Lemmer was deposed on October 15, 2003. His deposition was initially scheduled for October 9, 2003, but the deposition had to be rescheduled because the City's counsel was also preparing a pretrial order that week in another class action currently pending before Judge Bucklo. The City's counsel sent a letter to plaintiff's counsel explaining this scheduling conflict and offering to produce Lt. Lemmer for deposition on October 15, his next available date. (*See* Pls. Ex. D.) Plaintiff's counsel agreed to conduct the deposition that day and never voiced any objection to the rescheduling until the instant motion, wherein counsel accuses the City of intentionally "manipulat[ing] the deposition schedule" to somehow undermine plaintiff's preparation of his motion for class certification (which, incidentally, plaintiff had nearly *one year* to prepare). (Pls. Br. at 4.) The casual manner with which plaintiff hurls allegations of intentional misconduct without concern for the facts is dismaying, but unfortunately typical of the way he has chosen to litigate this case.

[2] Plaintiff's Exhibit E purports to contain two letters, dated October 15 and October 16, 2003, respectively. The first letter attached by plaintiff is dated October 15, 2003, but that is a false date. That letter was actually sent by plaintiff to the City's counsel on July 5, 2003 (a correct copy of the letter is attached hereto as Ex. A) and, in any

-4-

CHI-1383910v1

relating to the claims or defenses in the case. (*See* Pls. Ex. G; *see also* Pls.' Ex. H, Request Nos. 1 & 2.) When the City offered case law confirming that such shotgun requests are invalid under Rule 34 and again invited plaintiff to serve an appropriate request for the documents (*see* Pls.' Ex. I), plaintiff refused and instead filed this motion.

## II. ARGUMENT

Federal Rule of Civil Procedure 34 requires that every request for production of documents and things "shall set forth, either by individual item or by category, items to be inspected, and *describe each with reasonable particularity.*" Fed. R. Civ. P. 34(b) (emphasis added). As with all other discovery requests, Rule 34 requests must seek only relevant, discoverable material, and cannot be employed as a predatory tactic to overburden or harass the recipient. Fed. R. Civ. P. 26(b)(1)-(2) and (c). As courts in this district have confirmed, "[t]he Federal Rules encourage the parties to present their general need for information in discrete, focused requests," and do not "mandate that each party turn everything in its possession over to the other side." *M. McGee Design Studio, Inc. v. Brinson*, 1994 U.S. Dist. LEXIS 9789 at * 28-29 (N.D. Ill. July 18, 1994) (Conlon, J.) (refusing to enforce an overly broad, "catch-all" request seeking all documents that the party would rely on in the litigation); *Arnold v. Janssen Pharmaceutica, Inc.*, 2003 U.S. Dist. LEXIS 16380 (N.D. Ill. Sep. 17, 2003) (Bobrick, Mag. J.) (denying plaintiff's motion to compel where discovery request at issue was an improper "catch-all" request demanding that defendant produce all documents relevant to plaintiff's claims that were not otherwise specifically requested).[3] Requests that are vague and overbroad are not sufficient to put the recipient on reasonable notice of what documents are sought, and thus do not

---

(continued...)

event, it has nothing to do with the documents in question. For the Court's convenience, the City has attached the letter that actually was sent on October 15, 2003 hereto as Ex. B.

[3] Copies of all unreported decisions cited herein are attached, alphabetically, as Ex. C.

-5-

comply with Rule 34. *See, e.g., Alexander v. Federal Bureau of Investigation*, 188 F.R.D. 111, 121 (D.D.C. 1998) ("[p]laintiffs' catch-all requests for any documents which refer or relate in any way to [a matter at issue in the case] and any and all records relating to this case are also impermissibly vague" and the defendant was not required to respond). Under these standards, it is clear that plaintiff's motion to compel must be denied.

### A. Plaintiff Has Never Served a Proper Rule 34 Request Seeking Production of the Documents In Question

As plaintiff's own motion makes plain, there has *never* been a formal request served upon the City seeking production of the file materials associated with General Orders 78-1, 92-05 and 02-03 -- the documents that plaintiff now demands. When the dispute over these documents arose, the City's counsel invited plaintiff to either (i) issue a proper Rule 34 request for the documents; or (ii) identify some previous discovery request that called for their production. (*See* Pls. Ex. F.) Plaintiff's only response was to claim that these documents should have been produced in response to Requests 1 and 2 of plaintiff's First Set of Requests for Production. (*See* Pls. Ex. G.) Those requests, which were served months before plaintiff added class allegations to his complaint, demanded that the City produce:

1. All Documents which relate to, support and/or rebut any of the allegations or claims in Plaintiff's Complaint in this action.

2. All Documents relating to or supporting Defendants' Affirmative Defenses and Answer to the Complaint in this action, including all Documents upon which Defendants may rely at trial.

(*See* Pls. Ex. H ¶ 1-2.) But, as the cases noted above make clear, these "catch-all" requests for all relevant documents are wholly improper and cannot be enforced to compel production of particular materials. *See M. McGee Design Studio, Inc.*, 1994 U.S. Dist. LEXIS 9879 at *28 (such shotgun requests asking another party to "give us everything you think is important, whether or not we specifically asked for it already" are improper); *see also Stephens v. City of*

*Chicago*, 203 F.R.D. 353, 360 (N.D. Ill. 2001) (Rule 34 requests "like those [served by plaintiff] are so overly broad that in asking for everything under the sun, they ask for nothing specific"; defendants were not required to respond to "catch all" production requests). Obviously, these blunderbuss requests provide no basis for the Court to grant plaintiff's motion to compel.

After the City offered case law showing that these "all relevant documents" requests were insufficient as a matter of law (*see* Pls. Ex. I), plaintiff now points in his motion to other requests (ones he never discussed with the City prior to filing this motion) as supposedly calling for the documents. In particular, plaintiff now claims that the documents should have been produced in response to previous requests seeking "all Orders of the CPD regarding probable cause hearings for pre-trial detainees" or "all Orders of the [CPD] identifying the Person(s) responsible for ensuring that a pre-trial detainee arrested without an arrest warrant receives a probable cause hearing and/or the timing when he/she should receive the hearing." (*See* Pls. Br. at 3, *see also* Pls. Ex. A ¶¶ 1, 10.) That is simply not the case.

By their plain terms, those requests sought the CPD *Orders*, if any, addressing those particular subjects. The term "Order" was specifically defined by plaintiff to mean "all directives, orders, detective orders and/or any other written statements of policy or procedure of the Chicago Police Department." (*See* Plaintiff's Third Set of Interrogatories to City of Chicago, attached as Ex. D, Definition C.)[4] Plaintiff's requests, characteristically, had no temporal limitation, but the appropriate time period -- even considering the putative class period -- is from 1999 forward. (*see* SAC ¶ 25.) On that basis, the City produced to plaintiff General Orders 92-05 and 02-03, which were the *only* Orders, as defined, in place in CPD regarding these subjects during that time period. There can be no argument that plaintiffs were entitled by this request to

---

[4] Plaintiff incorporated the definitions and instructions from his third set of interrogatories in his third set of document requests.

CHI-1383910v1

have the City produce every CPD order throughout the history of time that arguably related to these topics, even if -- like General Order 78-1 -- the order was long abolished by the time plaintiff or any person in the putative class was arrested by the CPD. *See Stephens*, 203 F.R.D. at 359 (document requests that are overly broad in time and scope are improper and unenforceable). Moreover, nothing in these requests puts the City on notice that plaintiff was actually seeking not just the Orders as defined, but also all related file materials -- which are the specific documents now in contention. The discovery rules require the City to respond to reasonably particularized requests, not to produce all documents that might potentially be relevant or to read plaintiff's mind and thus infer that he wanted documents he did not request. *See M. McGee Design Studio, Inc.*, 1994 U.S. Dist. LEXIS 9879 at *28-29.

The documents that the City produced at Lt. Lemmer's deposition were produced *solely* because they related to one of the topics about which he was to be deposed -- namely the changes that the CPD implemented to the provisions of General Order 78-1 that were challenged in *Robinson*. The documents show unequivocally that the CPD rescinded that challenged policy immediately and issued periodic internal reminders informing personnel that the policy had been rescinded. (*See* Pls. Ex. B at D00735-D00732.) Because plaintiff's 30(b)(6) deposition notice did not request any documents (*see* Pls. Ex. C), the City was under no obligation whatsoever to produce those documents. It did so only because these orders related specifically to General Order 78-1, a subject of Lt. Lemmer's deposition. Although plaintiff states that these orders "could not be more relevant to the matters at issue in this case," (Pls. Br. at 4), that is simply not true. More importantly, even it if *were* true, that would not mean that plaintiff had ever properly asked for the orders, which he did not.

The orders the City produced at Lt. Lemmer's deposition are not in effect at CPD, and have not been in effect for years. (*See* Pls. Ex. B.) General Order 78-1, as well as all of the teletype orders relating to that directive, were specifically rescinded in 1992 by General Order 92-05, and thus were not in place when plaintiff Lopez or any member of the putative class was arrested. Therefore, the relevance of these documents is far from clear. Moreover, plaintiff has known about these assorted orders for years and never asked the City to produce them, a fact that squarely undercuts his current hysterical claims of malfeasance by the City. On the very first page of General Order 92-05, it states plainly that that order rescinded several prior directives, and it lists them specifically. (*See* Ex. E.) Each of the teletype orders that plaintiff now claims are so relevant and crucial was disclosed on the first page of General Order 92-05, which plaintiff received years ago. (*Id.*) Yet he never served a single request asking for those rescinded orders. Plaintiff's actions, or lack thereof, speak far more strongly than his rhetoric, and confirm without a doubt that plaintiff had all of the information necessary to request these outdated directives if he believed them to be relevant and he simply failed to do so.

**B.     Plaintiff Should Be Required To Comply with the Federal Rules**

Plaintiff chastises the City several times in his papers for insisting that plaintiff serve a formal request for discovery, rather than simply producing documents in response to plaintiff's informal letter requests. (*See* Pls. Br. at 5-6.) The law is perfectly clear, however, that "[d]efendants are not required to produce material not formally requested. Letter requests are not a formal document request. Letter requests can be a tool for abusive discovery." *Stephens*, 203 F.R.D. at 360. Rule 34 sets forth a clear practice for document discovery, and one of its key components is that parties, like the City, who receive requests under that rule are afforded 30 days to respond and to preserve appropriate objections. Fed. R. Civ. P. 34. For a municipality like the City, which is involved in a multitude of court cases, it is vital to conduct discovery

-9-

CHI-1383910v1

formally so that the City can maintain effective internal management of the discovery process, keep track of what has been requested and produced, and ensure that objections are made where appropriate. Plaintiffs should not be allowed to make an end-run around the discovery rules simply because they neglected to file a timely and proper request.

### C. The Court Should Award the City Its Costs and Fees Incurred in Responding to This Motion

As the discussion above shows, plaintiff has never served a proper Rule 34 request for the documents in question. When this dispute arose, the City invited him numerous times to do so and to comply with the rules. He refused and instead chose to lodge this premature, groundless motion. Because plaintiff's motion is so plainly frivolous and abusive, this Court should not only deny the motion, but should also award the City its fees and costs incurred in responding to the motion.

## III. CONCLUSION

For all of these reasons, the City respectfully requests that the Court deny plaintiff's motion to compel and award the City its fees and costs.

Dated: October 22, 2003

Respectfully submitted,

/s/ June K. Ghezzi

June K. Ghezzi
Jason G. Winchester
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601-1692
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

Attorneys for City of Chicago

## CERTIFICATE OF SERVICE

I, Jason G. Winchester, an attorney, hereby certify that I caused a true and correct copy of the foregoing *City of Chicago's Response in Opposition to Plaintiff's Fifth Motion to Compel* to be served, via facsimile, upon:

Michael Kanovitz
Loevy & Loevy
312 N. May St., Suite 100
Chicago, IL 60607
312.243.5902 (facsimile)

Darcy Proctor
Ancel Glink Diamond Bush
  DiCianni & Rolek
140 S. Dearborn, 6th Floor
Chicago, IL 60603
312.782.0943 (facsimile)

this 22d day of October, 2003.

Jason G. Winchester

# SEE CASE FILE FOR EXHIBITS