U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

03 OCT 30 PM 5: 39

JOSEPH LOPEZ,                          )
                                       )
                 Plaintiff,            )
                                       )
        v.                             )       Judge Der-Yeghiayan
                                       )
CITY OF CHICAGO, OFFICER GOMEZ and     )       01 C 1823
OTHER AS-YET-UNIDENTIFIED CHICAGO      )
POLICE OFFICERS,                       )
                                       )
                 Defendants.           )

**DOCKETED**

**OCT 3 1 2003**

**NOTICE OF FILING**

TO:

FILED
OCT 3 0 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

        Mr. Jason Winchester
        Jones, Day, Reavis & Pogue
        77 West Wacker
        Chicago, Illinois  60601-1692

        Darcy Proctor
        Ancel Glink Diamond Bush DiCianni & Rolek
        140 South Dearborn, Suite 600
        Chicago, IL 60603

        Please take notice that on October 30, 2003, I filed
the attached REPLY at the United States Courthouse, 219 South
Dearborn, Chicago, IL.

                                    _____
                                    Attorney for Plaintiff

Michael Kanovitz
LOEVY & LOEVY
434 West Ontario, Ste. 400
Chicago, IL 60610

**CERTIFICATE OF SERVICE**

        I, Michael Kanovitz, an attorney, certify that on ~~October~~ November 30, 200~~2~~, I served by fax a copy of the attached ~~SECOND AMENDED COMPLAINT~~ Reply and Notice on the above-named parties of
record.

                                    _____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**OCT 3 1 2003**

JOSEPH LOPEZ,                          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )     Judge Der-Yeghiayan
                                       )
CITY OF CHICAGO, DETECTIVE JAMES       )     01 C 1823
DELAFONT, DETECTIVE JENNIFER DeLUCIA,  )
DETECTIVE HECTOR VERGARA, OFFICER JOSE )
GOMEZ, OFFICER DANIEL JACOBS and       )
OFFICER ROBERT MYERS,                  )
                                       )
          Defendants.                  )     JURY TRIAL DEMANDED

## PLAINTIFF'S REPLY BRIEF TO HIS FIFTH MOTION TO COMPEL

Chicago is refusing to produce a discrete set of

documents (called "Task Files")[1] generated when Chicago enacted

the policies challenged in this case. Chicago does not contend

that the Task Files are irrelevant or that they are too

burdensome to produce, and it even admits that it made a

conscious decision to withhold the existence of these documents

until only seven weeks remained in fact discovery. Rather,

Chicago contends that it need not produce the documents because

it has not receive a "proper" request and, though it could have

produced the Task Files within days after their existence was

first revealed at an October 15, 2003 deposition, it has chosen

---

[1] For lack of a better term, Plaintiff referred to these as
the "Subject Files" in his Motion, but he has since learned that
Chicago refers to them as "Task Files". See Chicago's 10/25/03
Letter To Plaintiff's Counsel, Exhibit A to this Reply. These
files contain the "legislative history" of Chicago's General
Orders.

instead to provoke a motion to compel and to put its resources into crafting a ten-page, sophistic Response to justify this position.

As explained below, Chicago's arguments why it supposedly was proper for it to withheld these documents for over a year are unfounded, and its continuing refusal to produce them now violates both the letter and the spirit of the Federal Rules. The Task Files are responsive to written discovery that Plaintiff served at the beginning of this case which request documents relevant to facts that Chicago specifically disputes in its Answer. Such document requests are perfectly proper under the Federal Rules and, prior to the 2000 amendments, were actually part of each party's affirmative disclosure obligations under Federal Rule 26. Moreover, Plaintiff did make a "direct hit" document request over a year ago for all of Chicago's orders concerning probable cause hearings, and Chicago very improperly chose to withhold a historical "Teletype Order" on this subject without lodging a time frame objection, or indeed any objection at all. Had Chicago complied with this request (or even made a time frame objection to alert Plaintiff to the existence of other withheld documents), Plaintiff would have served more specific requests covering the Task Files and there would be no issue to resolve at this late date.

Chicago's gamesmanship (obviously calculated to try to "run out the clock" on discovery) in the face of plainly

2

legitimate discovery requests has caused Plaintiff significant prejudice as there is now only about a month remaining in fact discovery. This leaves Plaintiff no ability to follow-up on the matters contained in the Task Files. Thus, as it stands, Chicago is succeeding in preventing Plaintiff from probing its unconstitutional policies and, perhaps, from holding it accountable in a way which will change them.

This Court has the power under Federal Rules 26 and 37 to undue the prejudice and force Chicago to cease this needless delay. Accordingly, Plaintiff requests that the Court order Chicago to turn over the Tasks Files on an expedited basis.

<u>**ARGUMENT**</u>

**A.** **Chicago Wrongfully Withheld The "Teletype Order" Until October 15, 2003, And Plaintiff Is Prejudiced As A Result**

Chicago tries to justify the unjustifiable by claiming that the reason it did not turn over the January 14, 1986 Teletype Order, Exhibit B to Plaintiff's Motion (the "Teletype Order"), when it was first requested more than a year ago, is because Plaintiff did not request it in a <u>proper</u> fashion. <u>See</u> Chicago's Response To Plaintiff's Fifth Motion To Compel ("Chicago's Response") at 7-9. The argument is a non-starter because, in June of 2002, Plaintiff served the following <u>proper</u> request:

> Provide all Orders of the CPD regarding probable cause hearings for pre-trial detainees.

3

See City of Chicago's Responses to Plaintiff's Third Set Of Requests For Production, Request No. 10, Exhibit A to Plaintiff's Fifth Motion To Compel. Chicago did not object to this request in any way. Id. Rather, Chicago stated that the only responsive document was General Order 92-05. Id.

Chicago now admits that the Teletype Order also fits squarely within the wording of Request No. 10, but tells the Court that it withheld the Teletype Order anyway because Chicago unilaterally decided (without telling Plaintiff) that the order was too distant in time from when Mr. Lopez was arrested and was thus outside of what Chicago supposedly considers to be the proper time frame. Chicago's Response at 7-8. Of course, Chicago never objected that Request No. 10 covered an improper time frame, and thus never gave Plaintiff any indication that there might be responsive documents that it did not produce. See City of Chicago's Responses to Plaintiff's Third Set Of Requests For Production, Request No. 10, Exhibit A to Plaintiff's Fifth Motion To Compel. This fact alone shows that Chicago's position is only a post hoc justification after it was caught playing games in discovery.

Moreover, that objection would have been baseless even if Chicago had made it because the Teletype Order is very much within the time frame relevant to this case. Plaintiff is pursuing liability directly against Chicago, based on a theory that Chicago was deliberately indifferent to the constitutional

4

violations which caused and the putative Class Members' injuries.
See Second Amended Complaint ("SAC") ¶¶ 59, 62. In support of
that theory, Plaintiff specifically alleges that Chicago failed
to revoke the "hold past court call policy" even after that
policy was declared unconstitutional in 1986 and even after
Chicago told the Seventh Circuit it was abolished, see SAC ¶ 15,
and Chicago denied these allegations. See Chicago's Answer to
SAC ¶ 15 ("Answer"), Exhibit B to this Reply. The Teletype Order
from 1986, therefore, is plainly relevant to the deliberate
indifference issue. Chicago's "time-frame" excuse for
withholding the document *sub rosa* is a red herring.

Given Chicago's argument, it goes without saying that
its failure to turn the Teletype Order over sooner is the result
of a conscious decision rather than an innocent oversight on its
part. That decision has prejudiced Plaintiff in at least two
ways: Plaintiff did not have the benefit of the document when he
filed his motion for certification, and, more to the point,
Plaintiff was lulled into forgoing particularized discovery on
the Teletype Order over the last year.

The first form of prejudice is discrete and, if
necessary, can be dealt with after Plaintiff sees Chicago's
Response to the Motion For Certification. However, the second
form of prejudice has affected Plaintiff's reasonable assumptions
about the state of the evidence in this case and shaped for the
worse the discovery that he has pursued over the last year. If

Chicago had produced the Teletype Order over a year ago, that would naturally have led to document discovery about the changes from that order (which contains very specific instruction about how to ensure that an arrestee receives a prompt probable cause hearing) to General Order 92-05 (which is bereft of such instructions). This discovery would have specifically requested all documents concerning the decision to make that change and even Chicago would have had to admit that the Task Files are fairly within the scope of such a request. Accordingly, if Chicago had timely produced the Teletype Order, the parties would not need to be arguing now about whether the Task Files are also within the scope of other discovery requests that Plaintiff has served in this case. See Response at 6-10 and Section B, below.

However, Chicago did not turn over the Teletype Order until only seven weeks remained in fact discovery, precluding Plaintiff from both obtaining the Task Files in a specific request and conducting effective follow-up discovery like deposing witnesses revealed in the Task Files. Plaintiff tried to mitigate this prejudice by asking Chicago to turn over the Task Files quickly and without court involvement so that Plaintiff could conduct such follow-up. But Chicago refused, and forced this Motion to Compel.

Under Federal Rule 37, this Court has authority to enter an order which will cure any unfairness caused by Chicago's intentional withholding of the Teletype Order. See Fed. R. Civ.

P. 37(d) (if a party fails to respond to a request for production a court may make any orders that are just); see also Fed. R. Civ. P. 37(a)(3) (evasive or incomplete response is treated as a failure to respond). At a minimum, fairness here requires that Chicago's delay until seven weeks before the close of fact discovery should not result in Plaintiff being unable to probe the contents of the Task Files through full discovery.

Accordingly, Chicago should be ordered to turn over the Task Files as soon as possible,[2] so that Plaintiff can evaluate the evidence and can determine what if any follow-up discovery is appropriate. Moreover, such relief should not preclude Plaintiff from seeking further relief based upon what he learns from reviewing the Task Files.

**B.  The Task Files Are Covered By Plaintiff's Prior Discovery Requests And Chicago Should Cease Withholding Them**

The Court should also compel expedited production of the Task Files because they are responsive to document requests which Plaintiff served at the beginning of this case. Once Chicago's failure to turn over the Task Files came to light, Chicago could have "saved face" simply by stating that it did not realize these documents were within the scope of the requests and then proceeded to turn them over. However, Chicago takes a much

---

[2]  Plaintiff initially requested that the files be turned over ten days after he filed his motion, but, in the course of the briefing schedule, that time already has past. Plaintiff believes that three business days from the date the Court rules would be an appropriate time for production.

more disturbing route, claiming that it previously made a knowing decision to withhold these documents even in the face of Plaintiff's requests because it decided that these were improper "shot gun" requests and thus did not obligate Chicago to produce any documents. Of course, Chicago never voiced this position until it was caught withholding the documents and the position that it can withhold the documents now is unavailing regardless.

Plaintiff's prior document requests are proper and do obligate Chicago to produce the Task Files. Early in this case, Plaintiff specifically requested that Chicago produce all documents relevant to the denials and affirmative defenses in its Answer or which it may use at trial to support them. See Plaintiff's First Set Of Requests For Production To Chicago, Request 2, Exhibit H to Plaintiff's Motion to Compel. Chicago calls this a "shotgun" or "catch-all" request which it claims are improper under the Federal Rules. While shotgun/catch-all requests may be improper, Plaintiff's Request 2 does not fit that description.

The Request is no different than the very obligations that the drafters of the Federal Rules previously saw fit to impose upon litigants as automatic requirements of discovery. For example, prior to the 2000 amendments to the Federal Rules, Federal Rule 26(a)(1) required that "without awaiting a discovery request" a party must disclose "all documents, data, compilations, and tangible things in the possession, custody, or

8

control of the party that are relevant *to disputed facts alleged
with particularity in the pleadings.*" Former Rule 26(a)(1) ,
Exhibit C to this Reply. Here, Plaintiff specifically alleged
that Chicago failed to abolish the hold past court call policy
after it was held unconstitutional in 1986 and Chicago
specifically denied this fact. <u>See</u> Answer ¶ 15, Exhibit B to
this Reply. The Task Files for General Orders 78-1, the Teletype
Order, and General Order 92-05 are all relevant to whether or not
that policy was abolished.[3]

Chicago cannot legitimately disregard a request which
requires production of these documents because it considers the
requests an inoperative "catch-all" obligation, when the Federal
Rules themselves imposed this same obligation without need to
even serve a request. <u>See</u> Wright & Miller, Federal Practice and
Procedure § 2211, Exhibit D to this Reply ("[T]he initial
disclosure requirements added in 1993 are designed to alert
parties to pertinent documents before formal discovery begins").

Moreover, the Federal Rules expressly permit a party to
describe documents by category and with only "reasonable
particularity" because it is impossible for the party requesting

---

[3] Other Task Files are also at issue in this motion and are
listed in Plaintiff's October 15 and 16, 2003 Letters to
Chicago's Counsel. The correct October 16 Letter is attached as
Exhibit E to Plaintiff's Motion but a misdated document was
accidentally attached as the October 15, 2003 Letter. Chicago
has attached the correct October 15, 2003 Letter as Exhibit B to
its Response.

production to specifically designate documents the existence of which are within the exclusive knowledge of the producing party.[4] Chicago's obstinate refusal to produce the4 Task Files is contrary to the ends of open discovery and reintroduces the type of gamesmanship that the Federal Rules attempt to abolish. <u>Id.</u> (noting that "if a party from whom discovery is requested in fact knows what documents and things are sought, it will be hard put to respond to the request saying that the designation is insufficient").

The cases Chicago cites as supposedly justifying its previous decision to withhold the Task Files and its continued refusal to produce them now in fact lend Chicago no support. None of these cases concern a failure to respond to a request like Plaintiff's (and like Federal Rule 26(a)'s automatic disclosure requirements), and none of them stand for the proposition that Chicago may continue withholding relevant documents now.

---

[4] Chicago makes a tortured argument that Plaintiff was on notice because the first page of General Order 92-05 lists a series of orders and teletype messages that it rescinded. First, Plaintiff only tenders the first page of 92-05, which is a 71-page order that covers a host of topics and no where specifies any procedures for ensuring timely probable cause hearings (unlike the specific provision of the Teletype Order). <u>See</u> Exhibit I to Plaintiff's Motion For Certification. Moreover, how plaintiff was supposed to know that the teletype message "00415" listed as rescinded by 92-05 was in fact the Teletype Order or how pertinent its provisions are to the present case, is a complete mystery. This level of supposed "disclosure" by Chicago does not shield its intentional decision not to produce the Task Files themselves.

Indeed, the only pertinent case Chicago cites is
Arnold v. Jansen Pharmaceutica, Inc., 2003 U.S. Dist. LEXIS 16380
*3 (N.D. Il. 2003) (Bobrick, J.), and it is pertinent only
because it was soundly reversed by Judge Gottschall when the
plaintiff challenged Magistrate Judge Bobrick's ruling.[5]  Like
Chicago here, the defendant in Arnold failed to produce certain
documents during discovery and then refused to turn them over as
a supplementation of prior responses (to plaintiff's request no.
27) when the plaintiff learned of them and specifically requested
them as a supplement.  Id.  The defendant tried to justify this
position by claiming that the plaintiff's prior request no. 27
was too general to have covered the documents and therefore they
were never requested.  While Magistrate Judge Bobrick agreed with
the defendant and refused to compel production of the documents,
Judge Gottschall disagreed on review stating that the plaintiff's
request to provide the documents as a supplement was "nothing
more than a more precise request for discovery within the reach
of plaintiff's timely-served request no. 27."  Arnold Order at 1.
Accordingly, Judge Gottschall ordered the defendant to produce
the documents as a supplement to its prior discovery responses.
Id.

---

[5]  Chicago likely failed to inform the Court of this vital
subsequent history out of an oversight on its part.  Plaintiff
attaches Judge Gottschall's opinion ("Arnold Order") as Exhibit E
to this Reply.

**C.**   **Chicago, Not Plaintiff, Should Be Sanctioned For Its Gamesmanship and Causing Delay**

Finally, Chicago has requested that the Court sanction Plaintiff for bringing this motion. The temerity of the request is astounding, not just because Plaintiff is correct on this motion, but because Plaintiff has been forced to move to compel Chicago on four other occasions, those motions were granted, and Chicago was never sanctioned.[6]

If any party should be sanctioned it is Chicago. Chicago wilfully withheld documents which it knew were relevant and made calculated decisions to risk violating outstanding discovery requests. Even now Chicago still refuses to produce the documents in order to prejudice Plaintiff. In addition to all the indicia of gamesmanship set out above, further proof lies in Chicago's most recent letter to Plaintiff on October 25, 2003 which confirms that it is simply trying to drag out responding so that Plaintiff cannot conduct follow-up discovery. See Chicago's 10/25/03 Letter, Exhibit A to this Reply.

_____

[6] At the hearing on the Motion, this Court inquired whether Plaintiff titled this the Fifth Motion To Compel to imply that Chicago had a history of noncompliance in this litigation. The answer to that question is yes. In this case, Chicago has forced Plaintiff to file four motions to compel, all of which were granted by Judge Darrah. Chicago is apparently hoping to capitalize on the fact that this Court may not have the benefit of familiarity with its history of noncompliance to create the impression that it is merely standing on legitimate objections when in fact this is part and parcel of its consistent strategy of delay.

The Letter documents that after the Court's hearing on October 23, 2003 counsel for Plaintiff approached counsel for Defendant to see if Chicago would relent in its position, and even suggested that Plaintiff would serve new requests if Chicago would only provide objections in time for Plaintiff to address them in this Reply. That plan would have allowed the Court to resolve any objections in as timely a fashion as it could resolve the underlying Motion to Compel and would have mooted Chicago's supposed grievance (one which Plaintiff believes is a post-hoc attempt to justify its obstruction) that it has never been "properly served with a request". Not surprisingly, Chicago rejected that very reasonable proposal. Id.

This refusal as much as everything else shows Chicago's true intent, which is simply to delay producing these documents until it is to late for Plaintiff to make effective use of them or conduct follow-up discovery. Such games, and Chicago's repeated violations of the Federal Rules are worthy of whatever sanction te Court deems appropriate.

### Conclusion

For the foregoing reasons, Plaintiff's Fifth Motion To Compel should be granted. The City of Chicago should be ordered to produce the Task Files listed in Plaintiffs October 15, 2003 and October 16, 2003 Letters within three days of the Court's Order.

13

Respectfully submitted,


_____
Arthur Loevy
Michael Kanovitz
Jon Loevy
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, Illinois 60607

Telephone: (312) 243-5900

# SEE CASE FILE FOR EXHIBITS