IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH LOPEZ, on behalf of himself )
and a class of others similarly situated, )
)
Plaintiffs, )
)
v. ) No. 01 C 1823
)
CITY OF CHICAGO, DETECTIVE )
JAMES DELAFONT, DETECTIVE )
JENNIFER DELUCIA, DETECTIVE )
HECTOR VERGARA, OFFICER )
JOSE GOMEZ, OFFICER DANIEL )
JACOBS and OFFICER ROBERT )
MYERS, )
)
Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Joseph Lopez's ("Lopez") motion for judgment as a matter of law and on Defendants' motion for judgment as a matter of law. For the reasons stated below, we deny Lopez's motion for judgment as a matter of law and we grant Defendants' motion for judgment as a matter of law.

## BACKGROUND

In July of 2002, a gun was fired by an individual riding in an automobile in the City of Chicago and a twelve year old boy was killed. Chicago Police officers conducted an investigation of the shooting and arrested Lopez. Lopez claims that Defendant Jose Gomez, one of the arresting officers punched Gomez in the face while he was handcuffed in the police car. Lopez was brought to the police station and was placed in an interrogation room. According to Lopez, he was not given adequate food, was not allowed to go to the bathroom, and was continually handcuffed to the wall. Lopez also contends that he was not provided with a bed to sleep in during his detention. Lopez has brought five claims in the instant action which include: 1) an excessive force claim, 2) a battery claim, 3) an unlawful extended detention claim, 4) an unlawful conditions of confinement claim, 5) and an intentional infliction of emotional distress claim. A jury trial was commenced and at the close of both sides' arguments, Lopez moved for a judgment as a matter of law on the unlawful detention claim. Defendants moved for a judgment as a matter of law on the unlawful detention claim, unlawful conditions of confinement claim, and intentional infliction of emotional distress claim. Defendants also moved for a judgment as a matter of law on the issue of whether Lopez could recover punitive damages for the unlawful detention claim, unlawful conditions of confinement claim, and intentional infliction of emotional distress claim.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 50(a) "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Fed. R. Civ. P. 50(a). A court may only grant judgment as a matter of law "where there is no legally sufficient basis for a reasonable jury to find for the nonmoving party." *Zimmerman v. Chicago Bd. of Trade*, 360 F.3d 612, 623-24 (7th Cir. 2004). In ruling on a motion for judgment as a matter of law the court must "view the evidence in the light most favorable to the nonmoving party, and must draw all reasonable inferences in that party's favor." *Id.* The court cannot "weigh the evidence or pass on the credibility of witnesses, nor . . . substitute [the court's] view of the contested evidence for the jury's." *Id.*

## DISCUSSION

I. Unlawful Extended Detention Claim

Defendants move for judgment as a matter of law on the unlawful extended detention claim. In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court found that under the Fourth Amendment "a judicial determination of probable cause" is

3

required before there may be an "extended restraint of liberty following arrest." *Id.* at 114. Subsequently, in *City of Riverside v. McLaughlin,* 500 U.S. 44 (1991), the Court found that after 48 hours of confinement "the arrested individual does not bear the burden of proving unreasonable delay" in regards to the failure to obtain a probable cause determination, and that "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57. In determining whether there was a "bona fide emergency or extraordinary circumstance" a court "cannot ignore the often unavoidable delays." *Bostic v. City of Chicago,* 981 F.2d 965, 967-68 (7th Cir. 1992). The court must determine "on a case-by-case basis whether the period of detention is reasonable in light of all the circumstances," *Patrick v. Jasper County,* 901 F.2d 561, 567-68 (7th Cir. 1990), and the court must consider "practical realities" that stem from the surrounding circumstances. *Bostic,* 981 F.2d at 967-68. In determining whether a delay was unreasonable the court "must allow a substantial degree of flexibility" and cannot rigidly find unreasonableness based upon the fact that detention continued beyond 48 hours. *Id.*

In instances where a detainee's probable cause hearing has been delayed a court should consider matters such as "unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and

other practical realities." *Id.*; *See also Patrick*, 901 F.2d at 567-68 (stating that the court should consider "all the circumstances accompanying the detainee's arrest, including transportation, booking, filing, photographing, fingerprinting, identity verification and criminal record "wanted" checks, as well as the number of individuals to be processed with the detainee in question.").

In the instant action, the evidence clearly shows that there were circumstances that constituted extraordinary circumstances. When the police arrested Lopez they were actively attempting to solve a crime involving the shooting of an innocent twelve year old boy. Thus, the police were dedicating their efforts to solve that heinous crime. The undisputed evidence in this case shows that the police were working around the clock attempting to solve the crime. It is not disputed that there existed probable cause to arrest Lopez as a suspect for the crime. Several witnesses had identified Lopez as the shooter of the victim. The evidence clearly shows that it was Lopez himself who created the delays he now accuses the Defendants for. Lopez, when arrested, lied to the police about his identity. While at the police station, Lopez gave the police two false alibis. In addition, Lopez made statements admitting that he was the shooter, but his statements turned out to be false, and he subsequently recanted. Lopez's actions in lying to the police, in providing false alibis, in admitting to being the killer and providing false information relating to such admission, and in subsequently recanting his latest lie required the allocation of police resources, and the continuation of the investigation of this murder. It is

5

unclear what Lopez's motives were in lying to the police, providing false alibis, admitting to the crime and then recanting. It appears that Lopez was trying to "outsmart" the police officers and trying to "play games" while the officers were working around the clock to solve the murder of a twelve year old child. Lopez's lies and his hindrance of a murder investigation resulted in the delay of probable cause hearing. Therefore, based upon the totality of the circumstances, the Defendants have established extraordinary circumstances for the extended detention of Lopez.

In addition to the extraordinary circumstances in this action, we note that the Defendant officers are protected by qualified immunity in regards to the unlawful extended detention claim. Generally, law enforcement officers "typically receive qualified immunity for conduct performed within the scope of their official duties." *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 648 (7th Cir. 2003). In determining whether an officer is protected by qualified immunity in a "§ 1983 case, the court must decide: (1) whether the plaintiff has shown a violation of her constitutional rights, and, if so, (2) whether those constitutional rights were clearly established at the time of the violation, 'such that a reasonable official would understand that what he was doing violates those rights.'" *Id.*

In addition, in regards to a determination of whether Lopez's detention was unreasonable after 48 hours, there is no definitive standard as to what situation constitutes a "bona fide emergency or other extraordinary circumstance." *City of*

*Riverside,* 500 U.S. at 47. The Seventh Circuit has made clear that there is no bright line rule and that each situation must be addressed on a case-by-case basis. Whether a situation constitutes a "bona fide emergency or other extraordinary circumstance" is often debated in litigation and is a difficult determination for legal counsel and a court much less a law enforcement officer. *Id.* Thus, even if the Defendant officers were to be found to have violated the admonitions in *Riverside*, due to the vague and generalized nature of the 48 hour rule, we find that the Defendant officers are protected by qualified immunity because they would not have reasonably understood that they were violating Lopez's constitutional rights. Therefore, we deny Lopez's motion for judgment as a matter of law on the unlawful extended detention claim and we grant Defendants' motion for judgment as a matter of law on the unlawful extended detention claim.

II. Unlawful Conditions of Confinement Claim

Defendants have moved for judgment as a matter of law on the unlawful conditions of confinement claim. It is not clear upon which part of the Constitution Lopez bases his unlawful conditions of confinement claim. For instance, in support of Lopez's proposed jury instructions on this case, when Lopez indicates his understanding of the pertinent law for the unlawful conditions of confinement claim Lopez cites portions of rulings that dealt with conditions of confinement claims based upon the Eighth and Fourteenth Amendments rather than the Fourth

Amendment. *See e.g. Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)(addressing Eighth Amendment); *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997)(addressing Eighth Amendment). Lopez also makes reference in his third amendment claim to "deliberate indifference" which is a consideration for claims brought under the Eighth and Fourteenth Amendment. (T Compl. Par. 60 (b)(d)). *Id.*

A plaintiff who is proceeding under a Section 1983 due process claim, needs "[t]o demonstrate a constitutional violation for the conditions of his confinement, [and the plaintiff] must prove both the objective component of his substantive due process claim (Did the conditions amount to punishment?) and the subjective or state of mind component (Did the officials act with a sufficiently culpable state of mind?)." *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998). The Seventh Circuit has made clear that the required culpable statement of mind is "deliberate indifference" which is defined as "recklessness in a criminal or subjective sense." *Id.* at 475. To show deliberate indifference "it is not enough to show that a state actor should have known of the danger his actions created." *Id.* Instead a plaintiff must establish "that the defendant had actual knowledge of impending harm which he consciously refused to prevent." *Id.* (affirming district court's grant of summary judgment for the defendants and finding that thee was no question of material fact as to whether defendants acted with deliberate indifference). In the instant action, none of the evidence introduced at trial indicates

that Defendant officers acted with intentional malice or with deliberate indifference. Even when viewing the evidence in the best light for Lopez the evidence shows at best that the Defendant officers were negligent. However, the Seventh Circuit has made it clear that "negligent acts are not enough to state a due process claim." *Id.*

To the extent that Lopez seeks to proceed under the Fourth Amendment for unlawful conditions of confinement, he is foreclosed because after he was placed in confinement his due process protections took over. *See Gonzalez v. Tilmer*, 775 F.Supp. 256, 261 (N.D. Ill. 1991)(quoting *Wilkins v. May*, 872 F.2d 190 (7th Cir.1989) for the proposition that "the Fourth Amendment protection against unreasonable seizures lasts only until such time as the arrestee 'has been securely placed in custody.'"); *See also Wilkins*, 872 F.2d at 194 (explaining that "[t]he question whether an interrogation was too coercive raises different issues, which the text, history, and judicial interpretations of the Fourth Amendment do not illuminate. . . ."); *Reed v. City of Chicago*, 867 F.Supp. 714, 718 (N.D. Ill. 1994)(rejecting notion that the Fourth Amendment applied to claim of unlawful confinement and detention and following *Wilkins* ); *Jones v. Thompson*, 818 F.Supp. 1263, 1267 (S.D. Ind. 1993) (stating that "[i]t is clear that between arrest and trial a detainee is entitled to the protection of the Fourteenth Amendment");*Edwards v. May*, 718 F.Supp. 1379, 1382 (N.D.Ill.1989). Also, even if the Fourth Amendment were found to apply to his detention, as is explained above, under the circumstances based upon the undisputed evidence in this case that showed Lopez's lies and the extraordinary

circumstances that were occurring during Lopez's confinement, no reasonable juror could find that the conditions of confinement were unreasonable. *See Lester v. City of Chicago*, 830 F.2d 706, 709 (7th Cir.,1987)(explaining the Fourth reasonableness standard).

III. Intentional Infliction of Emotional Distress Claim

Defendants move for judgment as a matter of law on the Intentional Infliction of Emotional Distress ("IIED") claim. Under Illinois law, for an intentional infliction of emotional distress claim a plaintiff must establish that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress."*Dunn v. City of Elgin*, 347 F.3d 641, 651 (7th Cir.2003)(quoting*Doe v. Calumet City*, 161 Ill.2d 374 (Ill. 1994)). In order for conduct to be deemed extreme and outrageous, that conduct "must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill.2003)). As is explained above, even when viewing the evidence in a light most favorable to Lopez the conduct of Defendant officers was at best negligent conduct. There was no evidence that indicates that Defendant officers intentionally caused Lopez severe emotional distress and there is not sufficient

10

evidence for a reasonable jury to find that Defendant officers "knew that there was a high probability that [their] conduct would cause severe emotional distress." Therefore, we grant Defendants' motion for judgment as matter of law on the IIED claim.

## CONCLUSION

Based on the foregoing analysis, we deny Lopez's motion for judgment as a matter of law on unlawful extended detention claim. We grant Defendants' motion for judgment as a matter of law on the unlawful extended detention claim, we grant Defendants' motion for judgment as a matter of law on the unlawful conditions of confinement claim, and we grant Defendants' motion for judgment as a matter of law on the IIED claim. Defendants' motion for judgment as a matter of law in regards to any punitive damages relating to the above three claims is denied as moot.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 23, 2005