IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH LOPEZ,                              )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )    No. 01 C 1823
                                           )
CITY OF CHICAGO, JAMES DELAFONTE,          )
JENNIFER DELUCIA, HECTOR VERGARA,          )
DANIEL JACOBS,                             )
                                           )
          Defendants.                      )
                                           )

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Joseph Lopez filed a lawsuit against defendants, the
City of Chicago ("the City"), James Delafonte, Jennifer DeLucia,
Hector Vergara, Daniel Jacobs, Jose Gomez, and Robert Meyers
(collectively "defendants") raising a number of 42 U.S.C. § 1983
claims arising from plaintiff's arrest by Chicago police for a
murder he did not commit.  Lopez has petitioned for (1) attorney
and paralegal fees in the amount of $888,592.00, (2) taxable
expenses in the amount of $33,177.72, and (3) other costs in the
amount of $28,932.00 pursuant to FED. R. CIV. P. 54, 42 U.S.C. §
1988 (2006), and 28 U.S.C. § 1920 (2006).  Defendants raise several
objections.  For the following reasons, the petition is granted in
part and denied in part.

I.

The following includes a brief review of the facts described
in detail by the Seventh Circuit in *Lopez v. City of Chicago*, 464

F.3d 711, 715-17 (7th Cir. 2006).  On July 19, 2000, a 12-year-old boy was killed in a drive-by shooting.  Based on one eyewitness's identification, Lopez was arrested without a warrant around 2 p.m. on July 20 by Officers Gomez and Myers.  Lopez initially lied to the police about his identity, but was identified by a police officer who was familiar with him.  After Lopez was taken into custody by Officers Gomez and Myers, Lopez was handcuffed, placed in the police car, and punched in the face by Gomez.  Lopez was then taken to the Chicago Police Department's Area 5 detective headquarters where they left him in the custody of the defendant detectives: Jennifer Delucia, James Delafont, Daniel Jacobs, and Hector Vergara.

Lopez was placed in a nine-by-seven-foot interrogation room and his arm was handcuffed to a metal ring fasted to the wall about three feet off the floor.  When Lopez asked to be unshackeld from the wall one of the detectives told Lopez "no" because he "was a murderer."  There was no sink, toilet, or running water in the room.  The room had no clock and Lopez did not have a watch.  He was kept shackled in the room for four days and four nights.  During that period he was fed once and was allowed limited access to the bathroom, only after screaming for detectives to grant him permission to leave the room.

Lopez filed his initial nine-count complaint on March 15, 2001 alleging: (1) excessive force against Officer Gomez and a policy

claim against the City under *Monell v. Dep't of Social Servs.*, 436
U.S. 658, (1978); (2) assault and battery against Gomez; (3)
intentional infliction of emotional distress against Gomez; (4)
unlawful detention against all defendants and a policy claim
against the City; (5) police torture against all defendants and a
policy claim against the City; (6) conspiracy against all
defendants and a policy claim against the City; (7) common law
civil conspiracy against all defendants; (8) respondeat superior
against City; and (9) indemnification against the City.  On July
17, 2001, plaintiff filed a first amended complaint which added
claims for failure to prevent excessive force against Myers and a
policy claim against the City, and expanded the intentional
infliction of emotional distress claim against all defendants.

On November 12, 2002, plaintiff filed a second amended
complaint which contained class allegations, omitted the initial
conspiracy counts, and added claims by plaintiff and the class
against the City for an unlawful detention policy under (1) the
fourth amendment and (2) the fourteenth amendment.  Also, although
false arrest was not formally pleaded in a specific count,
defendants contended the second amended complaint contained
allegations that "without probable cause" the officers arrested
Lopez.  On March 31, 2004, the court granted summary judgment to
Officers Gomez and Myers on the false arrest, police torture, and
intentional infliction of emotional distress claims and also

granted summary judgment to Officer Myers on the failure to intervene to prevent excessive force claims.

The court never reached the issue of class certification because plaintiff withdrew his class certification motion and then filed a third, and final, amended complaint on September 22, 2004 alleging the same claims as the initial complaint, but limiting the intentional infliction of emotional distress, unlawful detention, and police torture claims with respect to the individual defendants to DeLucia, Delafont, Vergara, and Daniels. The third amended complaint also omitted the original conspiracy counts.

A trial was held in March 2005. The court granted defendants' motion for judgment as a matter of law on plaintiff's unlawful detention, police torture, and intentional infliction of emotional distress claims. The only claims to go to the jury were the excessive force and assault and battery claims against Gomez. The jury found for Officer Gomez on all claims.

The Seventh Circuit reversed and remanded on appeal, finding that Lopez was entitled to judgment as a matter of law on his unlawful detention claim and the police torture and intentional infliction of emotional distress claims should have been decided by the jury. On remand, the case was reassigned to this Court, and the parties reached a settlement of all claims. Pursuant to the settlement agreement, plaintiff could seek reasonable attorneys' fees.

Defendants do not take issue with plaintiff's entitlement to fees as a prevailing party under § 1988, but with the computation of the fee award in light of plaintiff's dropped and unsuccessful claims.  (*See* Resp. Br. at 7) ("Nonetheless, the City does not object to a good portion of counsel's claimed time.").  Under § 1988, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).  Where a prevailing party has succeeded on some, but not all, of his claims an award of fees for time expended on unsuccessful claims may not be appropriate if these do not "involve a common core of facts or . . . [are] based on related legal theories." *Id*. at 435.

Plaintiff and his counsel litigated this case for a period of almost 6 years.  The claims can be generally grouped as follows: claims pertaining to (1) Lopez's initial arrest, (2) Lopez's subsequent detention, and (3) the class action.  With respect to claims pertaining to Lopez's initial arrest, the court granted summary judgment against Lopez on some claims and the remaining

claims were rejected by the jury.  Accordingly, these were not
"successful."  With respect to the detention claims, the Seventh
Circuit found that plaintiff was entitled to judgment as a matter
of law with respect to the unlawful detention claim, and that
plaintiff was entitled to submit his remaining claims regarding his
detention to the jury.  The City concedes plaintiff is entitled to
fees with respect to at least some of the detention claims.
Finally, the class action claims were withdrawn by plaintiff.
Accordingly, these claims were not "successful." The issue, then,
is what degree of overlap, if any, exists among these claims in
relation to the time entries objected to by defendants and the fees
sought.

A.  Objections to Time Entries Concerning Gomez and Myers

Defendants first take issue with specific entries they claim
were devoted solely to the unsuccessful arrest claims against
Officers Gomez and Myers.  As an initial matter, plaintiff points
out that even if he had not proceeded against Gomez and Myers on
the arrest claims these individuals would still have been witnesses
and subject to discovery because there is a common core set of
facts and the claims are based on related legal theories.  While I
need not determine the broader question of whether all arrest
claims are necessarily related to detention claims, the court's
ruling granting defendants judgment as a matter of law makes clear
that these arrest claims were considered related for purposes of

Lopez's unlawful detention claim against the detective defendants and the City.  The court stated that there were extraordinary circumstances which warranted Lopez's extended detention, specifically that

> [w]hen the police arrested Lopez they were actively attempting to solve a crime involving the shooting of an innocent twelve year old boy.  Thus, police were dedicating their efforts to solve that heinous crime. The undisputed evidence shows that police were working around the clock attempting to solve the crime. . . . it was Lopez himself who created the delays he now accuses the Defendants for.  Lopez, when arrested, lied to the police about his identity.

*Lopez v. City of Chicago*, No. 01 C 1823, 2005 WL 711986, at *2 (N.D. Ill. Mar. 23, 2005) *rev'd* by *Lopez*, 464 F.3d at 717, 722-23. Although the district court may have been incorrect on this point, plaintiff was clearly entitled to conduct discovery and research on this issue in making his case for unlawful detention against the City and remaining defendants.  Indeed, as early as 2001 the individual defendants alleged plaintiff was responsible for his own injuries.  (*See* Doc. Entries # 23-25, 75, 156, 155-57.)  Most of the entries objected to by defendants describe issuing discovery requests and reviewing responses generally and/or by Officers Gomez and Myers.  All these entries are appropriate in light of the overlap in legal issues and fact questions.  *See Hensley*, 461 U.S. at 435.  For example, entries 41, 73, 101-05, 122, 306-07, 769-70 are not specifically restricted to work related solely to the claims against Gomez and Myers, but concern general discovery and

review of answers and court rulings.  The only exception is entry 36, which simply provides "Gomez waiver issue."  On its face, this does not appear to relate to discovery and plaintiff fails to explain how this entry pertained to general discovery. Accordingly, I will grant defendants' objection with respect to entry 36.

I must also sustain the defendants' objection with respect to plaintiff's entries concerning the plaintiff's response to Gomez and Myers's motion for summary judgment.  Specifically, these entries are 658, 669, 672, 675-81, 684, 687, 692-93, 699, 702, 704-08, and 710-13 and paralegal Thayer's 1/23/04 entry.  Nothing in plaintiff's briefs in support of this petition sufficiently addresses the relationship between this claim and the remaining claims.  As set forth in the plaintiff's own response in opposition to the motion for summary judgment, that motion addressed a distinct issue.  In plaintiff's words:

> Defendant's[sic] dispositive Motion is far narrower and much less dispositive than it purports to be.
> . . .
> Despite the Defendants' voluminous submission, there is only one question which even arguably needs resolution by the Court: whether Officer Myers had a reasonable opportunity to prevent his partner, Officer Gomez, from committing excessive force after Gomez announced that he intended to strike Plaintiff.

(Pl. Resp. at 1-2, Doc. Entry # 121.)  In light of such a statement, and the fact that plaintiff did not appeal the summary judgment order, I cannot find that these specific entries required

work that overlapped with the unlawful detention claim against the remaining defendants. Moreover, the Seventh Circuit's decision and recitation of the pertinent facts reinforces the notion that this claim was discrete and did not affect the consideration of plaintiff's unlawful detention claim against the remaining defendants. Accordingly, plaintiff's request for fees is also denied with respect to entries 658, 669, 672, 675-81, 684, 687, 692-93, 699, 702, 704-08, and 710-13 and paralegal Thayer's 1/23/04 entry.

B. Objections to Class Action/*Monell* Entries

Defendants object to a number of entries as pertaining to plaintiff's withdrawn class action allegations. At the outset, I note that plaintiff failed to respond to defendants' objection to entry 243. Accordingly, defendants' objection is sustained with respect to that entry. As to the remaining entries, plaintiff disputes these pertain to *Monell* discovery, which required discovery on whether the City had an unlawful practice or policy in place (contrary to the City's assertions) and whether other detainees had been subjected to similar treatment under the practice or policy.

Defendants' objections rely heavily on the fact that on February 28, 2002 the court stayed all *Monell* discovery pending the completion of fact discovery against the individual officers. But this argument fails for two reasons. First, plaintiff's

investigation was not in violation of the stay for plaintiff was free to investigate his claims in the meantime because the stay pertained only to formal discovery with defendants. Second, the stay was lifted, for all functional purposes by Judge Darrah's October 24, 2002 Memorandum Opinion and Order, which states "The discovery as to the *Monell* claims is similar, if not identical, to the discovery that will be needed for the issue of class certification." I agree with plaintiff, and Judge Darrah, that there was a substantial overlap between the *Monell* claim and the class action claim and, therefore, these entries do not pertain solely to the class action claims.

Finally, defendants argue that plaintiff did not prevail on his *Monell* claim. As already described, plaintiff's unlawful detention claim against the City arises from the same common core of facts and is a related legal theory. The City's decision to moot the issue by entering into a waiver a few months before trial (and which it amended just six days prior to trial) does not extinguish plaintiff's entitlement to the discovery entries on this issue. Therefore, plaintiff is entitled to recovery for entries 85-86, 90-91, 94, 126, 144, 217, 234, 238, 748-50, 753-57, 1011 and 1013.

III.

Defendants next take issue with the reasonableness of plaintiff's attorneys' fees. "The most useful starting point for

determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. "The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999).

Plaintiff "may recover only those hours that his attorneys would bill in the private sector." *Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 22175620, at *3, (N.D. Ill. Sept. 9, 2003) (Holderman, J.) (citation omitted). Accordingly, I must exclude "hours that are excessive, redundant, otherwise unnecessary." *Id*. As with the determination of reasonable hourly rates, the applicant for fees must provide sufficient description of the type of work performed. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187 (7th Cir. 1992). "A court should not require any more than the level of detail paying clients find satisfactory." *Garcia*, 2003 WL 22175620, at *3 (citation omitted).

A. Objections to Duplicative Entries

Defendants argue plaintiff's counsel has billed for duplicative efforts in entries 72, 122, 143, 157, 201, 222, 258, 575, 580, 590, 593, 597-98, 604, and 739-41. I agree with defendants that entries 72, 143, 157, 201, 580, 590, 593, and 739 reflect duplicative efforts involving more than one of plaintiff's counsel attending a status hearing or deposition and are not

sufficiently justified by plaintiff.[1]  Accordingly, these are stricken.

The remaining entries pertain to collaborative efforts among members of plaintiff's legal team (including reviewing discovery responses and addressing other discovery issues, as well as preparing witnesses for depositions) and are reasonable and consistent with the nature of the case.  *See Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 661 (7th Cir. 2007) ("There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many lawyers can spend discussing a project.").  Accordingly, defendants' remaining objections on this ground are denied.

B.  Objections to Non-Legal Work

Defendants take issue with a number of attorney entries on the ground that they are for non-legal tasks which could have been performed by other staff members.  *See Spegon*, 175 F.3d at 553.  In particular, defendants take issue with entries for document review (including of arrest reports and the response to the subpoena for the State's Attorney's Office), telephone interviews of other arrestees, and entering information about those people into a database.  Defendants also contend these tasks are not sufficiently complex to even warrant entries by counsel's paralegal staff.  "The relevant inquiry for requested paralegal fees is 'whether the work

_____

[1]Some of these entries also identify additional activities by counsel, but fail to specify how much time was spent on each task and therefore must be stricken in their entirety.

was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder.'" *Id*. at 553 (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996)). Paralegal time spent on "'clerical' or secretarial tasks" should be disallowed. *Id*.

Unlike the type of work generally identified in *Spegon* as administrative or clerical, the entries at issue here are reflective of more complex tasks. Document review, as mundane as it sounds, cannot be categorically labeled as "non-legal work." In fact, it is how a lot cases are made and won. Lawyers are trained to understand the relevance of a written statement or existence of a document and its potential for admissibility, and this task cannot be summarily delegated to secretarial staff. Accordingly, the objections to entries concerning document review are overruled.

Similarly, the entries concerning the investigation of the plaintiff's *Monell* claim and interviews of other arrestees cannot be easily delegated to secretarial staff. Assessments concerning the relevance and potential admissibility of evidence in support of plaintiff's *Monell* claims are legal and were properly conducted by lawyers. Accordingly, the entries are not for "non-legal" work.

Finally, it is likely there will be some organizational tasks associated with compiling and maintaining an expanding electronic and physical database of discovery materials in a large case such

as this. Paralegals are trained to maintain and manage such databases and all of the entries complained of by defendants are not for strictly clerical tasks as identified in *Spegon*, but involve organizational and case management skills. Therefore, I deny defendants' objections with respect to entries 1/20/04, 2/15/05, 2/24/05, 3/1/05, 3/25/05, 3/28/05, and 5/7/07. The only paralegal entries which do appear to identify strictly clerical tasks are 10/21/03 ("Delivery of courtesy copy of motion"); 11/17/03 ("Photocopying"); 11/21/03 (same); 8/24/04 ("Messenger service or Plaintiff's response to [motion]"); 2/23/05 ("Photocopying and shipping"); 2/25/05 ("Photocopying"); and 3/22/05 ("Delivering Plaintiff's motion"). Accordingly, the defendants' objections with respect to the paralegal entries 10/21/03, 11/17/03 (second entry), 11/21/03, 8/24/04, 2/23/05, 2/25/05, and 3/22/05 are sustained. Plaintiff also withdraws entries 10/15/03, 10/16/03, 12/9/03, and 2/20/04, which pertain to filings related to the motion for class certification and fails to respond to defendants' objection with respect to the 10/23/03 entry (which also pertained to the motion for class certification). In sum, defendants' objections on paralegal entries 10/15/03, 10/16/03, 10/21/03, 10/23/03, 11/17/03 (second entry), 11/21/03, 12/9/03, 2/20/04, 8/24/04, 2/23/05, 2/25/05, and 3/22/05 are sustained.

C. Objections for Excessive, Unreasonable, and Unnecessary Work

Defendants complain the following entries are excessive or redundant in some manner: 40, 73, 79, 220-21, 253, 256, 353-58, 418, 575, 643, 646, 648-49, 653, 654, 691, 718, 720, 723, 724-26, 793, 843, 939, and 942. I have reviewed these entries and find they are reasonable. For example, entry 220 is for 1.5 hours spent reviewing draft discovery responses and in a conference with another attorney; entry 353 is for 1.00 hour for a conference discussing settlement strategies with 2 other attorneys; entry 793 is for 3.00 hours of drafting motions *in limine* addressing a *Daubert* challenge and detention law. Accordingly, defendants' objections to these entries are denied.

Defendants also complain the following entries are too vague or lack sufficient detail: 242, 403, 408, 413, 415, 421, 442, 528, 535, 727, 810, 839, 840, 842, 951, 956-58, 960, 963, 964, 973, 974, 976, 977, and 980. I have reviewed all these entries and find only entry 403 is vague because it only reads "[r]eview documents" and does not specify what kind of documents or in relation to what claim. Accordingly, defendants' objections are denied with respect to the remaining entries and granted with respect to entry 403.

Defendants also object to the following paralegal entries: 7/8/03, 7/15/03, 10/20/03, 10/21/03, 10/30/03, 11/17/03 (first entry), 12/9/03, 8/23/04, 2/28/05, 3/10/05, 3/13/05, 3/14/05, and

9/22/06.[2]   I deny the objections with respect to the entries
pertaining to plaintiff's fifth and sixth motions to compel because
the documents sought overlapped with plaintiff's *Monell* discovery.
Similarly, plaintiff's response to the City's motion to bar trial
of policy issues was not unwarranted or unreasonable in relation to
the issues in this case and plaintiff's concerns about the waiver
as expressed in his response in opposition.  (*See* Doc. Entry 149.)
Moreover, in light of plaintiff's larger success before the Seventh
Circuit on the unconstitutionality of his detention (which as a
result of the waiver would also apply to the City), *see Lopez*, 464
F.3d at 717 n. 1, work on this motion *in limine* is recoverable.
*See Jaffee v. Redmond*, 142 F.3d 409, 414-15 (7th Cir. 1998) ("an
unsuccessful but reasonable argument in support of a successful
claim may be compensable").   With respect to the remaining
paralegal entries, plaintiff fails to respond to defendants'
objection to entry 9/22/06 and I find entry 3/14/05 for "Task
unspecified" too vague despite plaintiff's purported explanation.
Accordingly, paralegal entries 9/22/06 and 3/14/04 are stricken.

     Finally, unlike the cases relied on by defendants, I do not
find the remaining entries defendants attack as "lumping" (by
attorneys or paralegals) prevent a court from determining whether
the time was reasonably spent.   The entries provided sufficient

_____

     [2]Objections to entries 10/21/03 and 12/9/03 have already been
sustained in section III.B.

detail as to the nature of the tasks, which are consistent with the total time spent on the tasks. The only exception is the time for paralegal Sharon Walsh, who billed in excess of 200 hours but failed to accompany any of her time entries with descriptions of the tasks accomplished, instead providing only a general affidavit. In the case of paralegals Ainsworth, Kanovitz, their accompanying affidavits provide sufficient description of the type of tasks they performed and do not render their time entries unreasonable in light of the limited nature of their time entries. Nor do I find plaintiff's counsel practice of billing quarter-hour increments unreasonable. Accordingly, defendants' remaining objections on these grounds are denied with the exception of the time for paralegal Sharon Walsh.

In sum, defendants' objections to attorney entry 403 and paralegal entries 9/22/06 and 3/14/04 are sustained. As is their objection to the time of paralegal Walsh.

D. Reasonableness of Attorney and Paralegal Hourly Rates

Determination of an attorney's reasonable hourly rate is based on the market rate for services rendered, "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon*, 175 F.3d at 555. An attorney's affidavit alone does not establish his or her reasonable market rate, but "in conjunction with other evidence of the rates charged by comparable lawyers is sufficient

to satisfy plaintiffs' burden." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000).

Plaintiff has submitted his counsel's billing records, affidavits by counsel of record, case law, news periodicals, and the Laffey Matrix in support of the rates set forth in the petition for attorneys' fees. This evidence, in particular the case law, satisfies plaintiff's burden with respect to his attorneys' hourly rates. *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001) ("The fee applicant can meet his initial burden 'either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases.'") (quoting *Spegon*, 175 F.3d at 556). "[O]nce an attorney provides evidence establishing his market rate, the opposing party has the burden or demonstrating why a lower rate should be awarded." *Gautreaux*, 491 F.3d at 659-60.

Defendants' attempts to demonstrate that a lower rate should be awarded are unavailing. As pointed out by plaintiff, the cases cited by defendants in support for lower rates are not current, instead ranging from 1999-2002. Furthermore, defendants' argument that civil rights attorneys are not compensated at rates higher than $300 an hour is contradicted by more current case law. *See, e.g., Delgado v. Village of Rosemount*, No. 03 C 7050, 2006 WL 3147695, *4-5 (N.D. Ill. Oct. 31, 2006); *Entertainment Software*

*Ass'n v. Blagojevich*, No. 05 C 4265, 2006 WL 3694851, at *2-3 (N.D. Ill. Aug. 9, 2006). Plaintiff has also voluntarily reduced attorney Kurt Feuer's rate to $350 an hour and his fees are to be calculated accordingly.

Similarly, plaintiff has submitted his paralegals' billing records or affidavits, and case law in support of the rate set forth in the petition for paralegal fees. The evidence satisfies plaintiff's burden with respect to his paralegals' hourly rates.

## E. Degree of Success Obtained

The degree of success obtained is a critical factor in determining the reasonableness of a fee award. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). In determining the degree of success obtained, I consider (1) the difference between the judgment actually recovered and the recovery sought; (2) the significance of the legal issues on which the plaintiff prevailed; and (3) the public interest at stake in the litigation. *See Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999). "[T]he notion that the fees must be calculated proportionally to damages" has been rejected by Seventh Circuit. *See Alexander v. Gerhardt Enter., Inc.*, 40 F.3d 187, 194 (7th Cir. 1994) (citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986)); *see also Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048 (7th Cir. 1999); *Riter v. Moss & Bloomberg, Ltd.*, No. 96 C 2001, 2000 WL 1433867, at *2 (N.D. Ill. Sept. 26, 2000) (Pallmeyer, J.).

The second and third factors weigh heavily in favor of a finding of reasonableness, for the significance of plaintiff's case and public interest at stake cannot be easily understated. After intensely contested proceedings, plaintiff vindicated his constitutional right. His case shed light on police practice and procedure in the City of Chicago, both with respect to the individual defendants and through the *Monell* waiver, and resulted in a finding by the Seventh Circuit that this practice and procedure was a violation of the Constitution. It is more difficult to gage what disparity, if any, existed between the settlement amount and recovery initially sought. Plaintiff's complaints never set forth a specific dollar amount for the relief sought and defendants fail to address this issue in their brief. Overall, in light of the nature of the case and the time span of the litigation, I decline to reduce the lodestar amount as unreasonable.

IV.

Defendants object to several of plaintiff's expenses and costs entries as excessive and vague. At the outset, plaintiff withdraws the following entries with respect to taxable expenses: 9, 18, 19, 32, 57, 58, 59, 223, 232, 237, 240, and 242-45. Plaintiff also withdraws the following entries with respect non-taxable expenses and costs: 12-16, 17-18, and 20. With respect to the remaining entries, plaintiff points out that although defendants' own bill of

costs, granted by the trial judge in 2005, was for $25,491.00, defendants now argue plaintiffs are not entitled to costs exceeding $13,504.24. Plaintiff's point is well taken - the defendants' own bill of costs in 2005 establishes a general reasonableness benchmark for purposes of costs in this litigation which defendants are hard-pressed to dispute. Moreover, an examination of the remaining costs entries at issue confirm these are not unreasonable or excessive. For example, plaintiff's attempt to create a replica of the small bench he was forced to sit and lie on for 4 days with the intention of using it as an exhibit at trial is not unreasonable. Nor are plaintiff's counsel taxi and other travel costs in light of the extensive nature of the litigation, hours worked, and length of trial. Plaintiff has submitted numerous receipts supporting the charges and I find this documentation sufficient. *See generally Telular Corp. v. Mentor Graphics Corp.*, No. 01 C 431, 2006 WL 1722375, at *10 (N.D. Ill. June 16, 2006). The overwhelming majority of these receipts are for taxis from plaintiff counsel's office to the federal court building. The entries for expenses and costs do not lack sufficient detail rendering them any vaguer than defendants' own bill of costs. Accordingly, the remaining objections are denied.

V.

Plaintiff's petition for fees and costs is granted in part and denied in part. The following attorney entries have been stricken

or withdrawn: 36, 72, 143, 157, 201, 243, 403, 580, 590, 593, 658,
669, 672, 675-81, 684, 687, 692, 693, 699, 702, 704-08, 710-13 and
739.  Attorney Kurt Feuer's rate is reduced to $350 an hour (for a
total of 94.5 hours worked).  The following paralegal entries have
been stricken or withdrawn: 10/15/03, 10/16/03, 10/21/03, 10/23/03,
11/17/03, 11/21/03, 12/9/03, 1/23/04, 2/20/04, 8/24/04, 2/23/05,
2/25/05, 2/28/05, 3/14/05, 3/22/05, and 9/22/06 (all by paralegal
Thayer).  Also, the time entries for paralegal Walsh have been
stricken (these totaled 209.5 hours at a rate of $105).  These
entries and the difference in Feuer's rates ($4,725.00) are to be
subtracted from plaintiff's request for $888,592.00 in fees.[3]

---

[3]The stricken entries break down as follows:

| Entry # | Attorney | Rate | Time | | |
|---|---|---|---|---|---|
| 36 | JL | 365 | 0.25 | $ | 91.25 |
| 72 | JL | 365 | 1 | $ | 365.00 |
| 143 | JL | 365 | 1 | $ | 365.00 |
| 157 | MK | 350 | 1.5 | $ | 525.00 |
| 201 | MK | 350 | 1.25 | $ | 437.50 |
| 243 | MK | 350 | 1 | $ | 350.00 |
| 403 | AL | 450 | 1 | $ | 450.00 |
| 580 | MK | 350 | 11.5 | $ | 4,025.00 |
| 590 | MK | 350 | 7.5 | $ | 2,625.00 |
| 593 | MK | 350 | 2.25 | $ | 787.50 |
| 658 | RA | 250 | 2.75 | $ | 687.50 |
| 669 | AL | 450 | 2.25 | $ | 1,012.50 |
| 672 | RA | 250 | 2.25 | $ | 562.50 |
| 675 | RA | 250 | 5 | $ | 1,250.00 |
| 676 | AL | 450 | 0.5 | $ | 225.00 |
| 677 | MK | 350 | 13.5 | $ | 4,725.00 |
| 678 | RA | 250 | 3.75 | $ | 937.50 |
| 679 | MK | 350 | 16 | $ | 5,600.00 |
| 680 | AL | 450 | 1.75 | $ | 787.50 |
| 681 | MK | 350 | 9.5 | $ | 3,325.00 |
| 684 | MK | 350 | 7 | $ | 2,450.00 |
| 687 | MK | 350 | 3.25 | $ | 1,137.50 |
| 692 | MK | 350 | 3.5 | $ | 1,225.00 |
| 693 | AL | 450 | 1 | $ | 450.00 |

22

Accordingly, defendants are ordered to pay attorneys' and paralegal fees in the amount of $819,577.00.

As for expenses and costs, the following entries have been stricken or withdrawn: 9, 18, 19, 32, 57, 58, 59, 223, 232, 237, 240, and 242-45, with respect to taxable expenses, and entries 12-16, 17-18, and 20 with respect to non-taxable expenses and costs. These entries are to be subtracted from plaintiff's request of

| | | | | |
|---|---|---|---|---|
| 699 | MK | 350 | 0.25 | $ 87.50 |
| 702 | AL | 450 | 0.75 | $ 337.50 |
| 704 | JR | 290 | 0.75 | $ 217.50 |
| 705 | JR | 290 | 0.25 | $ 72.50 |
| 706 | MK | 350 | 0.5 | $ 175.00 |
| 707 | JR | 290 | 0.75 | $ 217.50 |
| 708 | MK | 350 | 2.25 | $ 787.50 |
| 710 | MK | 350 | 1.5 | $ 525.00 |
| 711 | MK | 350 | 2 | $ 700.00 |
| 712 | AL | 450 | 0.25 | $ 112.50 |
| 713 | MK | 350 | 6 | $ 2,100.00 |
| 739 | MK | 350 | 1.25 | $ 437.50 |
| | Walsh | 105 | 209.5 | $21,997.50 |
| 10/15/2003 | Thayer | 105 | 4 | $ 420.00 |
| 10/16/2003 | Thayer | 105 | 3 | $ 315.00 |
| 10/21/2003 | Thayer | 105 | 0.5 | $ 52.50 |
| 10/23/2003 | Thayer | 105 | 0.5 | $ 52.50 |
| 11/17/2003 | Thayer | 105 | 1.5 | $ 157.50 |
| 11/21/2003 | Thayer | 105 | 0.5 | $ 52.50 |
| 12/9/2003 | Thayer | 105 | 0.5 | $ 52.50 |
| 1/23/2004 | Thayer | 105 | 1 | $ 105.00 |
| 2/20/2004 | Thayer | 105 | 0.5 | $ 52.50 |
| 8/24/2004 | Thayer | 105 | 0.5 | $ 52.50 |
| 2/23/2005 | Thayer | 105 | 0.5 | $ 52.50 |
| 2/25/2005 | Thayer | 105 | 0.75 | $ 78.75 |
| 2/28/2005 | Thayer | 105 | 0.75 | $ 78.75 |
| 3/14/2005 | Thayer | 105 | 2 | $ 210.00 |
| 3/22/2005 | Thayer | 105 | 0.75 | $ 78.75 |
| 9/22/2006 | Thayer | 105 | 3 | $ 315.00 |
| Total Billed | | | | $64,290.00 |

$33,177.72 and $28,932.00, respectively.[4]  Accordingly, defendants
are ordered to pay expenses and costs in the amounts of $11,537.12
(for taxable expenses) and $26,905.68 (for non-taxable expenses).

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: November 20, 2007

---

[4]The stricken expenses and costs break down as follows:

NONTAXABLE

| ENTRY # | AMOUNT |
|---|---|
| 9 | $    24.50 |
| 18 | $     2.21 |
| 19 | $     6.70 |
| 32 | $   231.00 |
| 57 | $   368.05 |
| 58 | $   368.05 |
| 59 | $   112.50 |
| 223 | $    30.00 |
| 232 | $   285.00 |
| 237 | $   119.27 |
| 240 | $     8.00 |
| 242 | $    48.00 |
| 243 | $   141.03 |
| 244 | $    12.98 |
| 245 | $   269.03 |
| Total | $ 2,026.32 |

TAXABLE

| ENTRY # | AMOUNT |
|---|---|
| 12 | $ 4,000.00 |
| 13 | $ 6,237.50 |
| 14 | $ 4,025.00 |
| 15 | $ 4,050.00 |
| 16 | $   700.00 |
| 17 | $   925.00 |
| 18 | $ 1,362.50 |
| 20 | $   340.60 |
| Total | $21,640.60 |